UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal No. 12-06-GFVT |
| | ) | |
| V. | ) | |
| | ) | **MEMORANDUM OPINION** |
| MICHAEL FRED PENNINGTON, | ) | **&** |
| | ) | **ORDER** |
| Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

*** *** *** ***

Two days before the scheduled beginning of the trial in this matter, the United States filed notice of its intent to introduce evidence of a prior bad act of the Defendant Pennington pursuant to Federal Rule of Evidence 404(b). [R. 41; R. 42]. The Court continued the trial [R. 49] and conducted a hearing so that the United States could introduce the prior bad act evidence for the Court's consideration.

At that hearing, the United States elicited testimony from a number of witnesses that detailed an incident that allegedly occurred in 2003 wherein Pennington, a state trooper at the time, intimidated a civilian woman into providing him with sexual services after pulling her over at a routine traffic stop. Pennington is currently awaiting trial on a criminal charge of knowingly using and carrying a firearm in connection to a drug trafficking crime. [R. 26 at 2]. As the current charge includes allegations of the use of intimidation while attempting to coerce an individual into performing sexual acts, the relevant issue is whether, and for what purpose, the

1

United States could introduce evidence of the prior bad act at the upcoming trial.  For the reasons stated herein, the Court concludes the prior bad act evidence is inadmissible.

**I.**

The use of prior bad acts at trial is a delicate issue as there is a high danger that the introduction of such evidence may lead to an improper guilty verdict from a jury.  The result of this concern is Rule 404(b)(1):  "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  That is not to say that evidence of prior bad acts is *never* admissible, however.  Under Rule 404(b), "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."

The Sixth Circuit has articulated a three-step analysis a court should use to determine whether prior bad act 404(b) evidence is admissible as permissible "other use" evidence.  "First, the district court must make a preliminary determination regarding whether there is sufficient evidence that the 'other acts' took place."  *United States v. Bell*, 516 F.3d 432, 441 (6th Cir. 2008) (quoting *United States v. Lattner*, 385 F.3d 947, 955 (6th Cir. 2004)).  The second step is for a court to "determine whether those 'other acts' are admissible for a proper purpose under Rule 404(b)."  *Id*.  Third and "[f]inally, the district court must determine whether the 'other acts' evidence is more prejudicial than probative."  *Id*.

**II.**

"The first step that the district court must engage in under the Rule 404(b) analysis is to determine whether there is sufficient evidence to show that the defendant committed the other acts."  *Id*.  This is an analysis the Court conducted at the conclusion of the evidentiary hearing

and where the Court essentially made a ruling from the bench that the United States had successfully satisfied this first step. To briefly summarize the Court's bench ruling here: the burden of this first step is low; a party need not prove beyond a reasonable doubt or even by a preponderance of the evidence that the prior bad act occurred. Instead, the party has met its burden "if the jury can reasonably conclude that the act occurred and that the defendant was the actor." *Id*. (citing *Huddleston v. United States*, 485 U.S. 681, 689 (1988)).

Relying largely on the testimony of Tammy Napier, the Court concluded that the burden had been met. In other words, it is within the realm of reasonableness for a jury to conclude, upon hearing the same testimony of Napier, that Pennington forced her into performing a sexual act, and that Pennington did so with his hand on his gun as Napier testified, and that this resulted in Napier feeling scared and further intimidated.

It is the second step, however, where the analysis becomes more difficult. "The second step of the district court's Rule 404(b) analysis is to determine whether the other acts evidence is admissible for a legitimate purpose." *Id*. "Legitimacy" in this instance requires a finding of admissibility, materiality, and probativeness. *Id*. at 441-42. Further, a "legitimate purpose" is something other than character propensity evidence, meaning that there must be some use for it other than supporting the inference that because Pennington may have done something similar in the past that he must also be guilty of the present charge. *See id*. ("[T]he trial court must decide whether that evidence is probative of a material issue other than character").

The United States seeks to introduce the prior bad act to prove that the gun's presence with Pennington in this instance "was not coincidental or by accident." [R. 42 at 9]. The government has indicated that it would use the prior bad act to show that Pennington had engaged in similar behavior in the past and that he had done so by knowingly using his gun; this

3

would rebut Pennington's anticipated argument that the gun's presence in this incident was purely coincidental. [*See* R. 51 at 7] (Pennington stating that, "[i]t is not rocket science to determine that the defense will be that the firearm was possessed because the defendant was an in-uniform . . . police officer at the time").

Rule 404(b)(2) lists a number of permitted uses of "other acts" evidence: "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  What is important to note is that this list is not exhaustive; Rule 404(b)(2) makes this clear by adding the words "such as" prior to the list to make it plain that it is only identifying common uses, not listing each and every acceptable one.  When read together:  "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  Fed. R. Evid. 404(b)(2). Thus, the list is nothing more than a number of common uses of "other acts" evidence, not a mandate to pigeonhole an attempted use into one of the enumerated uses.  *See United States v. Bakke*, 942 F.2d 977, 981 (6th Cir. 1991) ("The list contained in Rule 404(b) is not exhaustive; evidence may be admitted for additional similar purposes").

This makes sense as Rule 404's purpose is to prohibit the use of "other acts" character evidence to prove that one acted in conformity therewith, not to require that the evidence be used in one of many precise ways.  *United States v. Blankenship*, 775 F.2d 735, 739 (6th Cir. 1985) ("This is actually a rule of inclusion rather than exclusion, since only one use is forbidden and several permissible uses of such evidence are identified"); *see* Fed. R. Evid. 404(a)(1) ("Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait").  This is significant insofar as it is unnecessary to determine whether the government's intended use is most easily

categorized as "lack of mistake," listed as an acceptable use in 404(b)(2), or "lack of coincidence," not among those acceptable uses listed in Rule 404(b)(2). It is enough to say that the United States' intended use is not to prove that Pennington acted in conformity with his character as evidenced by a prior act. Instead, the government seeks to use the other act to prove Pennington's state of mind with respect to the gun in order to prove that its presence in this instance was not coincidental; a purpose that satisfies the "admissible purpose" prong of the sub-test applicable here.

The second and third prongs, materiality and probativeness, are also present. Materiality is obvious in that proving that the gun was there merely by "coincidence" would result in acquittal. Both the case law and the Sixth Circuit pattern jury instructions support such a finding. "To establish that a firearm was carried 'in relation to' a drug trafficking offense, the evidence must support a finding that the firearm furthered the purpose or effect of the crime and that its presence or involvement was not the result of coincidence." *United States v. Warwick*, 167 F.3d 965, 971 (6th Cir. 1999) (interpreting the elements of an 18 U.S.C. §924(c)(1) violation). The pattern jury instruction states in relevant part, "[the gun's] presence or involvement cannot be the result of accident or coincidence." Sixth Circuit Criminal Pattern Jury Instruction 12.02(2)(D) (2011). As a finding of coincidence would necessarily result in acquittal, its materiality is evident.

With respect to the final prong of this sub-test, the evidence must be "probative with regard to the purpose for which it is offered." *Bell*, 516 F.3d at 442. The Court agrees with the United States that "[t]he evidence of defendant's prior use of his duty weapon to intimidate a female while engaging in a violent criminal act is highly probative for demonstrating" that the gun's presence here when Pennington allegedly sought to intimidate another female into

5

performing a sex act was intentional and not a mere coincidence.  [R. 42 at 9].  Thus, all three

prongs of this sub-test for determining whether the United States' intended use is legitimate are

satisfied.

It is important to note that the permissible use concerns *only* Pennington's state of mind.

The acceptable purpose would be to show Pennington's state of mind in proving that he

knowingly, and not because of coincidence, used his gun in this manner on this particular

instance, not to show that Pennington was acting in conformity with his character on the

occasion in question.  The Court notes that these are fine lines it is drawing but there is a

distinction for a reason, and the United States' intended purpose falls on the legitimate side of

that dividing line as it does not offend the purpose of the Rule's prohibition on the use of

character evidence to prove character propensity.

"[F]inally, the district court must determine whether the 'other acts' evidence is more

prejudicial than probative."  *Bell*, 516 F.3d at 441 (quoting *United States v. Lattner*, 385 F.3d

947, 955 (6th Cir. 2004)).  Specifically, the Court must determine whether the probative value of

the evidence is *substantially* outweighed by the danger of unfair prejudice.  *Id*. at 440.  Only in

those instances where unfair prejudice is that much weightier than probativeness does this stage

of the analysis require exclusion.

A certain degree of prejudice is presumed to occur when "other acts" evidence is

introduced, even when done so for a legitimate purpose.  "[R]egardless of the stated purpose, the

likelihood is very great that the jurors will use the evidence precisely for the purpose it may not

be considered; to suggest that the defendant is a bad person . . . and that if he 'did it before he

probably did it again.'"  *Bell*, 516 F.3d at 444 (quoting *United States v. Johnson*, 27 F.3d 1186,

1193 (6th Cir. 1994)).  As a result, the Court must carefully consider the prejudice inherent in

each piece of contested 404(b) evidence when compared to its corresponding probativeness before ruling on its admissibility, and only in instances where there is a *substantial* risk of prejudice is it proper to exclude evidence on this ground.

This is just such an instance. Even though there is a high degree of probativeness associated with the evidence, it is so extremely prejudicial to Pennington that it must be excluded. The risk of unfair prejudice inherent in eliciting the testimony at issue is high. "Unfair prejudice," in this context, "speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Id*. (quoting *Old Chief v. United States*, 519 U.S. 172, 180 (1997)).

The relevant, otherwise admissible testimony here concerns Pennington's use of the gun during the alleged prior occurrence. But this evidence would necessarily arise in a context at trial that detailed other extremely inflammatory and prejudicial assertions. This is especially true given the similarities of those inflammatory assertions to the facts as alleged in the current case. Thus, there is an even higher risk that the jury would infer from Pennington's prior deed that he has "bad character" and then "tak[e] that as raising the odds that he did the latter bad act now charged (or, worse, as calling for preventive conviction even if he should happen to be innocent momentarily)." *Bell*, 516 F.3d at 445 (quoting *Old Chief*, 519 U.S. at 180-81). Try as it might, the Court is unable to conceive of a manner in which it could limit the prejudicial context in which the testimony must be elicited from the otherwise admissible testimony. The probative value of the testimony is inextricably intertwined with its corresponding high risk of unfair prejudice.

### III.

Having fully considered the issue, the Court must conclude that the danger of unfair

prejudice intrinsic in the evidence at issue does indeed substantially outweigh the evidence's probative value.  As such, Pennington's Motion in Limine [R. 51] to exclude the introduction of the relevant evidence addressed herein is **GRANTED**.

This, the 11th of May, 2012.

Signed By:

*Gregory F. Van Tatenhove*

**United States District Judge**